NOTICE
Decision filed 07/19/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 200340-U

NO. 5-20-0340

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 09-CF-1130 |
| | ) | |
| DORIAN BOYD, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Boie and Justice McHaney concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The circuit court's dismissal of a second stage postconviction petition was not in error where the defendant failed to make a substantial showing of a constitutional violation.

¶ 2   After a jury trial, the defendant, Dorian Boyd, was convicted of first degree murder and sentenced to 40 years in the Illinois Department of Corrections. His direct appeal was unsuccessful. He subsequently sought relief through a postconviction proceeding. He now appeals the second stage dismissal order entered by the circuit court of St. Clair County. For the reasons that follow, we affirm the circuit court's decision.

¶ 3                                I. BACKGROUND

¶ 4   On September 22, 2009, Dion Hardin was fatally shot in the chest outside of Club Peek-a-Boo in Brooklyn, Illinois. The defendant, Dorian Boyd, was convicted of first degree murder (720

1

ILCS 5/9-1(a)(1) (West 2008)) following a jury trial for the death of Hardin. The defendant was sentenced to 40 years in the Illinois Department of Corrections and 3 years of mandatory supervised release. We affirmed the conviction and sentence on direct appeal. *People v. Boyd*, 2014 IL App (5th) 110481-U.

¶ 5 The defendant filed a postconviction petition pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)), where he raised numerous claims of ineffective assistance of counsel. The circuit court summarily dismissed the defendant's petition and the defendant appealed. We held that the defendant's postconviction petition set forth the gist of a constitutional claim of ineffective assistance of trial counsel at the first stage and reversed and remanded for further proceedings. *People v. Boyd*, 2018 IL App (5th) 150310-U. The facts necessary to our disposition of the issues raised in this appeal are as follows.

¶ 6 The defendant's jury trial began on May 23, 2011. During the defendant's opening statement, the defense presented a theory that the defendant did not shoot Hardin. The defense argued that the State relied on the club's poor quality surveillance videos where it was nearly impossible to distinguish anything in the videos. The defense further argued that a day or two after the shooting, Justin Harper was apprehended with a firearm that matched the bullet excised from the deceased, alluding that Harper was the actual shooter.

¶ 7 Officer Locke testified, as a firearms examiner, that he had tested the weapon found in the possession of Justin Harper. The recovered bullet and cartridge matched the test shots fired from the recovered gun.

¶ 8 The jury was shown videos recovered from the club's surveillance system taken during the night of the incident. The club's owners, Madison Garrett and Andrea Garrett, testified at trial about the club's video surveillance system. Both Madison and Andrea Garrett testified that they

2

had known Hardin and the defendant for several years. The defendant was known as "Big D." The club owners identified the defendant and Hardin on the videos. Andrea testified that she was certain that the defendant was the man in the video who was seen confronting Hardin. She testified that she saw a gun in the video and Hardin collapsed as the gun was pointed against his chest. Andrea also identified other men depicted in the surveillance videos, including Christopher Adams.

¶ 9    Christopher Adams testified at trial that he witnessed the incident. According to Adams, the defendant hit Hardin, Hardin raised his hand up, and then the defendant shot Hardin. Christopher admitted that he initially told the police that the shooter may have been Justin or the defendant. He also acknowledged that he had agreed to testify truthfully pursuant to a cooperation agreement that he made with the State in exchange for receiving probation in a matter unrelated to this case.

¶ 10    Officer Tyson Melvin testified that he spoke with Madison and Andrea Garrett and collected the video evidence from the club's surveillance system. On cross-examination, Melvin testified that he was not certain that he saw a discharge of a weapon, a flash, or report of a gun on the videos. Defendant's trial counsel additionally questioned Melvin about his interviews with several witnesses, including Deontri Wiley and Andre Murray. Melvin testified that those witnesses indicated in their statements that they had not seen anyone with a gun.

¶ 11    At the close of the State's case, the defendant made a motion for a directed verdict. The circuit court denied the motion. The defendant did not testify. Defense counsel did not present any evidence on the defendant's behalf.

¶ 12    During closing arguments, the State argued there were two propositions that it had to prove to sustain the charge of first degree murder. The first proposition was that the defendant performed the acts which caused the death of Hardin. The second proposition was that the defendant intended

to kill or do great bodily harm to Hardin, he knew such acts would cause the death of Hardin, or he knew that such acts created a strong probability of death or great bodily harm to Hardin.

¶ 13    The State, in closing, said the following when arguing that the defendant acted knowingly:

> "And not to—I'm not going to insult your intelligence by belaboring the issue, but just briefly how do we know that he intended to kill or knew that his acts would cause death or create a strong probability of death or great bodily harm? Well, the surveillance video shows him waiting for [Hardin] to come outside. He had a plan that night. It indicates he knew what he was going to do. He had a car waiting for him right in front of the club.

> He had a .45 calibre [*sic*] firearm with him. And as soon as [Hardin] exits the building, the defendant attacks him, firing a gun into [Hardin's] chest. After the shooting the defendant ran into a car that was parked nearby waiting for him. And it's common knowledge that any time a gun is fired at a person, it's likely to cause death or great bodily harm."

¶ 14    The jury found the defendant guilty of first degree murder. The defendant appealed, and we affirmed the defendant's conviction and sentence. See *Boyd*, 2014 IL App (5th) 110481-U.

¶ 15    On June 25, 2015, the defendant filed a postconviction petition pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)). The defendant claimed that his constitutional rights were violated because: (1) appellate counsel failed to challenge the sufficiency of the evidence; (2) appellate counsel failed to raise ineffective assistance of trial counsel for failing to bring expert rebuttal testimony analysis on gunshot residue and burns, and within this argument, the defendant claimed ineffective assistance of counsel for failing to investigate and interview witnesses; (3) appellate counsel failed to raise an *Apprendi* violation (*Apprendi v. New Jersey*, 530 U.S. 466 (2000)); (4) appellate counsel failed to raise prosecutorial misconduct; and (5) trial counsel failed to file a pretrial motion to quash the arrest. Trial transcripts, along with Illinois State Police investigative reports summarizing the interviews with Deontri Wiley, Andre Murray, and Travon Wiley, were attached as exhibits to the postconviction petition.

4

¶ 16   The circuit court summarily denied and dismissed the defendant's postconviction petition at the first stage of the proceedings. The defendant appealed the circuit court's postconviction decision in *People v. Boyd*, 2018 IL App (5th) 150310-U, and only raised issue with ineffective assistance of trial counsel for failing to conduct a reasonable investigation. Specifically, the defendant alleged that trial counsel failed to interview three potential defense witnesses: Deontri Wiley, Andre Murray, and Travon Wiley. We reversed and remanded for further proceedings.

¶ 17   On June 2, 2020, the defendant filed a supplemental postconviction petition in the circuit court. In his supplemental petition, the defendant incorporated his initial postconviction petition and further claimed that: (1) trial counsel was ineffective for failing to object to the admission of surveillance videos under the Illinois eavesdropping law (720 ILCS 5/14-2 (West 2008)) and appellate counsel was ineffective for failing to raise this issue on appeal; (2) trial counsel was ineffective for failing to object when the State misstated the law during closing argument and appellate counsel was ineffective for failing to raise this issue on appeal; (3) trial counsel was ineffective for his failure to interview witnesses; and (4) trial counsel was ineffective for failing to pursue plea negotiations. The supplemental postconviction petition included several attachments, including summaries of police interviews with Andre Murray, Deontri Wiley, and Travon Wiley; an affidavit of Kelvin Boyd; and an affidavit of the defendant.

¶ 18   According to the police report summary of Andre Murray's interview, Andre knew the victim and Andre knew the shooter as "Big D." Andre was on the steps of the club when the fight began. He was not aware of anything leading up to the attack. "Big D" was outside when Hardin exited the club. Hardin got "smacked" and had raised his hands to protect himself. Then, Hardin was shot. Andre did not see the gun. "Big D" was the only one fighting with Hardin. Andre believed that "whatever happened was from a premeditated situation."

¶ 19    As outlined in the summary of Deontri's police interview, Deontri went to the club with his cousin, Travon Wiley. Deontri saw the defendant move towards Hardin. Deontri heard a gunshot, but he did not see anyone with a gun. After the shot was fired, Deontri ran from the scene.

¶ 20    Travon Wiley's summary of his police interview stated that Travon was intoxicated when the shooting occurred. He heard a gunshot, but he did not see a gun and was not able to identify the shooter.

¶ 21    Kelvin Boyd, the defendant's cousin, attested that he drove the defendant to Club Peek-a-Boo so that the defendant could buy marijuana. Kelvin waited in the car at the club for the defendant. He "observed a scuffle and heard gunfire." When the defendant returned to the car, the defendant said that he "did not mean for that to happen." Kelvin did not see the defendant with a firearm.

¶ 22    The defendant attested that his counsel ignored requests to negotiate a plea deal and interview witnesses. The defendant had requested that trial counsel negotiate a "lesser charge." The defendant further attested that trial counsel stated that the State's case was "weak," he did not need to interview witnesses or introduce evidence, and it was the "easiest case he's tried [*sic*]." The defendant additionally attested that he provided trial counsel with the names of witnesses, including Justin Harper and Kelvin Boyd. The defendant additionally requested that his trial counsel interview those witnesses who made statements to the police indicating that they never saw the defendant with a gun.

¶ 23    The State filed a motion to dismiss the postconviction petition on July 15, 2020. The State addressed the allegations in the initial postconviction petition and the supplemental petition. The State denied misstating the law during its closing argument and argued that the jury instructions would have remedied any misstatement of law, if any misstatement had been made. The State also

6

argued that the decision on who to call as a witness was a matter of trial strategy. The State additionally argued that the defendant did not provide evidence that interviewing or producing any of the witnesses identified would have changed the result of the trial. The State denied the claim that trial counsel was ineffective for failing to pursue plea negotiations. The State further argued that the defendant had waived this issue because it was not raised on direct appeal.

¶ 24 On September 18, 2020, the defendant filed an affidavit of Justin Harper. Justin attested that he went to the club with the defendant, that Hardin had exited the club, and a fight began. Justin heard a gunshot, saw Hardin fall, and Justin returned to the car with the defendant. Justin was never contacted by trial counsel.

¶ 25 Also on September 18, 2020, the circuit court held a hearing on the State's motion to dismiss the defendant's supplemental postconviction petition. The circuit court allowed the affidavit of Justin Harper to be included as part of the supplemental petition. The State rested on its written motion to dismiss.

¶ 26 The defendant argued that trial counsel was ineffective for not investigating the case. Trial counsel had not contacted witnesses, although the witnesses were available, and he was provided with information regarding their testimony. The defendant claimed that the testimony from the witnesses supported a second degree murder instruction. The defendant also argued that the State misstated the law during closing argument, where it suggested that intent was proven simply because there was a shooting. Trial counsel failed to object, and the jury instructions did not remedy the error. The defendant additionally argued that the Illinois eavesdropping law could have applied where the record was not clear on whether the surveillance videos had audio.

¶ 27 In response, the State asked the circuit court to apply the same arguments made in its motion to dismiss to the newly filed affidavit of Justin Harper. The State argued that Justin's

affidavit would not have changed the outcome of the trial. The circuit court took the matter under advisement.

¶ 28    On September 23, 2020, the circuit court issued a written decision on the State's motion to dismiss. The circuit court addressed the claims of ineffective assistance of trial counsel and appellate counsel raised by the defendant in the initial postconviction petition as well as the supplemental postconviction petition.

¶ 29    The defendant raised ineffective assistance of trial counsel claims in regard to the following claims: that trial counsel failed to assert that the defendant's arrest violated due process; trial counsel was ineffective for failing to investigate witnesses that the defendant believed would have provided exculpatory evidence; and trial counsel was ineffective for failing to pursue plea negotiations. The circuit court found that these claims were waived[1] by the defendant as they could have been raised on direct appeal.

¶ 30    The circuit court additionally found that even if the defendant had properly raised these issues, they had no merit. The circuit court found that the defendant's arrest warrant was timely issued, and the issue of probable cause had been presented to a grand jury. The defendant had not demonstrated that trial counsel's performance was deficient on this claim.

¶ 31    The circuit court found that the defendant's claim regarding trial counsel's failure to investigate witnesses was meritless. Kelvin's affidavit would not have been exculpatory because he would have testified at trial that the defendant said that "he did not mean for that to happen." Justin's attestation failed to deny that the defendant was involved in the fight with Hardin, failed

---

[1]Although the trial court indicated the defendant had "waived" certain issues that could have been raised during the direct appeal, the proper terminology is "forfeited." "A postconviction action is not an appeal from the judgment of conviction, but is a collateral attack on the trial court proceedings. Thus, issues raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised but were not are forfeited." *People v. Tate*, 2012 IL 112214, ¶ 8.

8

to deny that the defendant had a gun, and failed to deny that the defendant shot Hardin. As for the other potential witnesses, the defendant had only provided summaries of their statements given to the Illinois State Police. Officer Tyson Melvin testified that those potential witnesses denied that they saw the defendant with a gun. Therefore, the exculpatory evidence was before the jury through the officer's testimony. The circuit court found that the defendant was unable to satisfy either prong of the *Strickland* test, *i.e.*, deficient performance by counsel or prejudice. See *Strickland v. Washington*, 466 U.S. 668 (1984).

¶ 32     The circuit court also found that the defendant's claim that trial counsel was ineffective for failing to pursue plea negotiations was without merit. The defendant had only provided self-serving statements in his affidavit filed as part of his postconviction petition. He had not attached any transcripts where he had complained to the circuit court or correspondence demonstrating that trial counsel would not engage in plea negotiations. The circuit court found that the defendant had failed to corroborate his claim regarding plea negotiations.

¶ 33     The remaining claims raised by the defendant addressed ineffective assistance of appellate counsel. The circuit court found that the defendant had not met the burden of demonstrating that appellate counsel was ineffective on those claims. The circuit court additionally found that the defendant had not shown that he suffered a substantial denial of his constitutional rights; therefore, the circuit court granted the State's motion to dismiss the defendant's petition for postconviction relief. This appeal followed.

¶ 34                               II. ANALYSIS

¶ 35     On appeal, the defendant argues that the circuit court erred in granting the State's motion to dismiss during the second stage postconviction proceeding where the defendant made a substantial showing of ineffective assistance of counsel on the following claims: (1) trial counsel

9

failed to engage in plea negotiations, (2) trial counsel failed to object to the State's inaccurate statement of law in its closing argument and appellate counsel failed to raise this issue on appeal, and (3) trial counsel failed to investigate witnesses.

¶ 36    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2020)) allows a defendant to collaterally attack a final judgment and is not a substitute for an appeal. *People v. Edwards*, 2012 IL 111711, ¶ 21. "[I]ssues raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised but were not are forfeited." *People v. Tate*, 2012 IL 112214, ¶ 8. The doctrines of *res judicata* and forfeiture are relaxed where forfeiture stems from ineffective assistance of appellate counsel, where facts relating to the claim do not appear on the face of the original appellate record, or where fundamental fairness so requires. *People v. English*, 2013 IL 112890, ¶ 22.

¶ 37    The Act provides a three-step process to resolve a criminal defendant's conviction or sentence that resulted from a violation of rights protected under the state or federal constitution. *People v. York*, 2016 IL App (5th) 130579, ¶ 15. At the first stage of postconviction proceedings, the court reviews the petition independently and determines whether the petition is frivolous or patently without merit. *York*, 2016 IL App (5th) 130579, ¶ 15. The defendant must make a substantial showing of a constitutional violation at the second stage. *York*, 2016 IL App (5th) 130579, ¶ 16. During this stage, all well-pleaded facts, not positively rebutted by the trial record, are taken as true. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). The petition is dismissed if no showing of a constitutional violation is made by the defendant. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). The circuit court's decision to dismiss a petition at the second stage is reviewed *de novo*. *Pendleton*, 223 Ill. 2d at 473. If the petition advances to the third stage, the circuit court

10

will hold an evidentiary hearing on the defendant's claims. *People v. Wallace*, 2018 IL App (5th) 140385, ¶ 27.

¶ 38 Criminal defendants have a constitutional right to effective assistance of counsel. *People v. Hale*, 2013 IL 113140, ¶ 15. Claims of ineffective assistance of counsel are governed by the familiar two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, to establish a claim of ineffective assistance of counsel, the defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance resulted in prejudice. *People v. Hughes*, 2012 IL 112817, ¶ 44.

¶ 39 The defendant must overcome the strong presumption that trial counsel's actions were the product of sound trial strategy and not incompetence to establish deficient performance. *People v. Tucker*, 2017 IL App (5th) 130576, ¶ 26. Representation will not be considered ineffective based on mistakes in trial strategy or judgment alone as a defendant is entitled to "competent, not perfect, representation." *Tucker*, 2017 IL App (5th) 130576, ¶ 26. "In establishing the prejudice prong, the defendant must show that there is a reasonable probability that, but for his attorney's deficient performance, the result of the proceedings would have been different." *Tucker*, 2017 IL App (5th) 130576, ¶ 26. An ineffective assistance of counsel claim may be disposed of without addressing counsel's performance if the defendant did not suffer prejudice. *Hale*, 2013 IL 113140, ¶ 17.

¶ 40 Claims of ineffective assistance of appellate counsel are also subject to the two-pronged *Strickland* test. *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). The defendant must show that (1) appellate counsel's failure to raise an issue on appeal was objectively unreasonable and (2) appellate counsel's decision prejudiced the defendant. *People v. Phillips*, 2017 IL App (4th) 160557, ¶ 66. The defendant cannot demonstrate prejudice from appellate counsel's failure to raise

an issue on appeal where the underlying issue is without merit. *Phillips*, 2017 IL App (4th) 160557, ¶ 66.

¶ 41                                    A. Plea Bargain

¶ 42     There is no constitutional right to plea bargain. *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). The defendant's right to effective assistance of counsel extends to aspects of the plea-bargaining process where the State chooses to enter into plea negotiations. *People v. Crenshaw*, 2012 IL App (4th) 110202, ¶ 13. "An attorney's decision to initiate or pursue plea negotiations falls within the category of trial strategy or professional judgment." *People v. Leeper*, 317 Ill. App. 3d 475, 483 (2000).

¶ 43     The only document supporting the defendant's claim that his counsel failed to enter into negotiations for a plea bargain was the defendant's self-serving affidavit attached to the supplemental postconviction petition. The defendant attested that he had requested that his trial counsel negotiate a "lesser charge." The defendant further attested that he had a conversation with trial counsel where they discussed whether the State had sufficient evidence to sustain a conviction for first degree murder. The defendant's affidavit suggests that trial counsel's decision not to pursue plea negotiations was based on his professional judgment.

¶ 44     Additionally, the State had not initiated plea negotiations in this case. The defendant has not demonstrated that a favorable plea agreement could have been reached. Further, the defendant has not demonstrated prejudice; therefore, he has not established a claim of ineffective assistance of trial counsel.

¶ 45                                    B. Closing Argument

¶ 46     During closing argument, the State is barred from misstating the law or facts of the case, from making remarks that diminish their burden of proof, or commenting on matters not based on

evidence. *People v. Buckley*, 282 Ill. App. 3d 81, 89 (1996). Reversible error occurs where improper comments result in substantial prejudice. *Buckley*, 282 Ill. App. 3d at 90. "The test to determine whether the misstatement constituted substantial prejudice to the defendant is whether the jury would have reached a contrary verdict had the misstatement not been made." *People v. Jackson*, 2012 IL App (1st) 092833, ¶ 36. Challenged remarks in a closing argument must be viewed in context and closing arguments are reviewed in their entirety. *People v. Caffey*, 205 Ill. 2d 52, 131 (2001).

¶ 47    A defendant commits first degree murder under section 9-1(a)(1) when he "either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another." 720 ILCS 5/9-1(a)(1) (West 2008). The defendant's mental state may be inferred from the acts of the defendant and from the circumstances surrounding the offense. *People v. Pollard*, 2015 IL App (3d) 130467, ¶ 27.

¶ 48    During the State's closing argument, the prosecutor stated, "And it's common knowledge that any time a gun is fired at a person, it's likely to cause death or great bodily harm." The defendant argues that proving that a weapon was discharged does not automatically prove the defendant's mental state required for a first degree murder conviction. The defendant, however, acknowledges that the voluntary and willful act of a defendant in pointing a gun and shooting it in the victim's general direction is sufficient evidence of the intent requisite to constitute the offense of murder. See *People v. Cannon*, 49 Ill. 2d 162, 166 (1971).

¶ 49    When reviewing the entirety of the State's closing argument, the State had not solely argued that intent was proven merely because a gun was fired. The State emphasized the facts of this case and the circumstances surrounding the firing of the weapon while arguing that the defendant had the intent to kill or knowledge that firing the weapon could cause death. Specifically,

13

the State argued in its closing argument that the video surveillance evidence showed the defendant was waiting for Hardin to exit the club. The defendant had a car waiting, and he had a gun. When Hardin exited the club, the defendant attacked Hardin, shot him in the chest, and then the defendant ran to the car. After describing what had occurred, the State commented, "And it's common knowledge that any time a gun is fired at a person, it's likely to cause death or great bodily harm." When considering the closing statement in its entirety, the State argued that the defendant intentionally discharged the gun at Hardin and, based on the reasonable inferences drawn from the facts of the case, firing a weapon at an individual under these circumstances is likely to cause death or great bodily harm.

¶ 50    As the underlying claim is without merit, trial counsel's performance was not deficient for choosing not to object to the State's closing argument. Appellate counsel's performance, therefore, was not deficient for failing to raise this issue on direct appeal. The circuit court did not err in granting the motion to dismiss as it relates to this issue.

¶ 51                               C. Witness Investigation

¶ 52    "Defense counsel has a professional obligation, both legal and ethical, to explore and investigate a client's case." *People v. Makiel*, 358 Ill. App. 3d 102, 107 (2005). For a claim of ineffective assistance of counsel based on trial counsel's failure to investigate to prevail, the defendant must show that substantial prejudice resulted and that there is a reasonable probability that the result would have been different had counsel properly investigated. *People v. Orange*, 168 Ill. 2d 138, 151 (1995). Where there is no evidence that exculpatory evidence exists, the defendant cannot demonstrate a substantial showing of ineffective assistance of counsel for failure to investigate or call a witness. *People v. Dupree*, 2018 IL 122307, ¶ 37. The decision on who to call as a witness is a matter of trial strategy, and generally immune from claims of ineffective assistance

14

of counsel, unless counsel's strategy was "so unsound that no meaningful adversarial testing was conducted." *People v. Enis*, 194 Ill. 2d 361, 378 (2000).

¶ 53    In *People v. Boyd*, 2018 IL App (5th) 150310-U, the defendant appealed the dismissal of his postconviction petition after first-stage review on the issue of whether trial counsel was ineffective for failing to interview potential defense witnesses identified in police reports. Those witnesses identified were Deontri Wiley, Andre Murray, and Travon Wiley.

¶ 54    Now, the defendant argues that his trial counsel was ineffective based on his failure to interview Justin Harper, Kelvin Boyd, and Andre Murray. In the defendant's supplemental postconviction petition, he provided affidavits for Kelvin Boyd and Justin Harper and relied on the same police report that was attached to the initial postconviction petition for Andre Murray. The issue of whether trial counsel was ineffective for failing to interview Deontri Wiley, Travon Wiley, or any other witness, as alleged in the defendant's original postconviction petition, was not raised in this appeal.

¶ 55    The defendant presented a defense at trial that he was not armed, and the shooter was Justin Harper. The defendant argued that Justin Harper was present at the scene, and he was subsequently charged with unlawful use of the murder weapon. Now, the defendant is claiming that trial counsel was ineffective for failing to investigate Harper as a potential witness to exonerate the defendant. The affidavit provided by Harper, however, did not expand on why a fight began outside of the club, and Harper did not attest that he, or anyone else, had committed the crime.

¶ 56    Kelvin Boyd attested that he drove the defendant to the club and waited for the defendant in the car. He heard a gunshot, but never saw a gun. Kelvin additionally attested that the defendant returned to the car and said that he did not "mean for that to happen." His testimony did not align

15

with the defendant's defense that the defendant was not the shooter. Kelvin's affidavit also did not describe any details about what had happened at the time of the shooting.

¶ 57    The defendant did not provide an affidavit of Andre Murray. According to the police report summary, Andre knew the shooter was "Big D," and "Big D" was the only one fighting with Hardin. Andre believed that "whatever happened was from a premeditated situation." Trial counsel questioned Officer Melvin on his witness interviews. Melvin testified that those witnesses had not seen anyone with a gun. The defendant had not demonstrated that the outcome of the trial would have differed had Andre testified in addition to Melvin's testimony from the police report summary that Andre had not seen the gun.

¶ 58    The defendant has not proven that counsel was ineffective where the witness affidavits do not demonstrate that exculpatory evidence actually exists. The defendant has not demonstrated how the witnesses would have reasonably advanced any claim of mitigated first degree murder. Neither prong of the *Strickland* test can be established based on the witness affidavits or the police report summary of Andre's interview.

¶ 59    The defendant has not made a substantial showing of a constitutional violation during the second stage postconviction proceeding. The trial court did not err in dismissing the defendant's supplement postconviction petition.

¶ 60                                III. CONCLUSION

¶ 61    For the reasons stated above, we affirm the order of the circuit court of St. Clair County.


¶ 62    Affirmed.


16